IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE QUANDEL GROUP, INC., Plaintiff | No. 3:01cv131 |
| v. | (Judge Munley) |
| BEACON HILL MORTGAGE CORP. and ALPHONSO JACKSON, Secretary of the United States Department of Housing and Urban Development, Defendant | |

## MEMORANDUM

Before the court for disposition are motions for summary judgment filed by each of the parties in this action. The matters have been briefed and are ripe for disposition.

**Background**

Plaintiff Quandel Group, Inc., contracted with CNH, Inc. to provide management services with regard to the construction of a nursing home in Carbondale, Pennsylvania. (Doc. 1, Complaint at ¶ 5). This contract (hereinafter "construction contract") provides that the work was to be financed by a building loan secured by a mortgage and insured by Defendant Alphonso Jackson, Secretary of the United States Department of Housing and Urban Development (hereinafter "HUD"). (Id. at ¶ 10). The terms of the loan are set forth in a building loan agreement between Quandel and Defendant Beacon Hill Mortgage Corp. (hereinafter "Beacon Hill"). (Id.).

Plaintiff Quandel asserts that in consideration of executing the construction contract with CNH, it received assurances from CNH and Beacon Hill that sufficient funds would be held in trust with Beacon Hill to pay for the labor and materials to be provided by Plaintiff Quandel. (Id. at 11). Plaintiff then entered into subcontracts with regard to various aspects

of work on the project. (Id. at 12). Quandel contends that it fully completed the terms of the contract, but Beacon Hill has refused to release payment of the funds to it for services rendered in connection with the project. (Id. 13).

The funds held by Beacon were specifically held in trust for the labor and materials supplied to the project by Quandel according to the plaintiff. (Id. at 15). Plaintiff further avers that Beacon wrongfully released project operating funds to CNH to cover extension fees, in violation of the mortgage agreement. (Id. at 14).

Based upon these facts, plaintiff instituted a four-count complaint against Beacon Hill. The complaint asserts causes of action for breach of contract as third-party beneficiary, constructive trust, detrimental reliance, and unjust enrichment. (Doc. 1, Complaint).

After a somewhat circuitous procedural history, discovery was finally commenced and summary judgment motions were filed by both Quandel and Beacon.

Plaintiff Quandel filed a separate action against Defendant HUD. In that case, plaintiff asserts that the building loan agreement was endorsed for insurance by HUD. (United States District Court for the Middle District of Pennsylvania Docket 3:03cv1743, Doc. 1, Complaint (hereinafter "Complaint 2") at ¶ 10). The insurance provided that if CNH defaulted, Beacon could obtain payment of the outstanding unpaid balance on the mortgage from HUD. (Id. at ¶ 14). The total amount of insurance was $5,473,300.00. (Id. at ¶ 12).

As a condition for issuing the insurance, Defendant HUD took control of the project, inspecting and approving plans and specifications as well as

2

approving requests for construction changes. (Id. at ¶¶ 22-24). Loan payments could not be made to Plaintiff Quandel until HUD approved the request. (Id. at 26). HUD also assumed the right to interpret the contract documents and determine compliance therewith. (Id. at ¶ 31). HUD was required to determine the date of substantial completion of the project. (Id. at ¶ 30). Plaintiff Quandel asserts that it relied upon the fact that HUD guaranteed payment for the work and that money would thus be paid for the labor, materials and services it provided. (Id. at ¶ 37).

Quandel asserts that it completed the project in 1999 and submitted its final pay application on March 11, 1999 seeking the final payment of $222,333.00. (Id. at ¶¶ 39-40). HUD had to approve this payment for it to be made. (Id. at ¶ 42). HUD would not authorize the release of the payment, asserting defects in the floor slab installation. (Id. at 46). Plaintiff Quandel asserts that the work was properly finished and that HUD would not release the final payment because they were concerned about CNH's ability to pay its mortgage. (Id. at ¶ 44, ¶ 47). In fact, on February 8, 2002, CNH filed for bankruptcy. On November 22, 2002, Beacon assigned the mortgage to HUD, and collected the insurance proceeds from HUD. (Id. at ¶ 51). HUD still refuses to release the funds requested by Plaintiff Quandel. Pursuant to these allegations, Plaintiff filed suit to recover on the basis of quantum meruit, third-party beneficiary, constructive trust and detrimental reliance.

The second complaint was consolidated with the initial complaint on January 11, 2007. Subsequently, Defendant HUD filed a motion to dismiss/summary judgment, and both the plaintiff and Defendant Beacon Hill filed motions for summary judgment. The motions have been fully

briefed and are ripe for disposition.

**Jurisdiction**

We have jurisdiction over the Beacon Hill claims under the diversity jurisdiction statute as plaintiff is a citizen of Pennsylvania and Defendant Beacon Hill is a citizen of Ohio.  See  28 U.S.C. § 1332.  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).  Plaintiff asserts that this court has jurisdiction of the HUD action based upon diversity of citizenship as the Secretary of HUD is deemed to reside in Washington, D.C.  HUD challenges this court's jurisdiction, and we will discuss its arguments below.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898

F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

### I. Beacon Hill's motion for summary judgment

First we will discuss Defendant Beacon Hill's motion for summary judgment.  Beacon Hill raises several different issues.  We will address them *in seriatim*.

#### A.  Assignment of the contract

Beacon Hill first argues that it has assigned all right, title and interest in the building loan agreement to HUD. Thus, it no longer owes any duty to the plaintiff, who should rather seek relief solely from HUD.  After a careful review, we disagree.

First we note that it is uncontested that Beacon Hill has assigned the mortgage at issue to HUD. (Doc. 70, Beacon Hill's Statement of Undisputed Facts, ¶ 10; Doc. 90, Plaintiff's response thereto admitting the

assignment of the building loan agreement).  We must simply determine the effect that this assignment has on plaintiff's claim.

Pennsylvania law provides that absent express contractual provision a contract which does not involve personal skill, trust or confidence may be assigned without consent of the other party.  Greater Nanticoke Area Educ. Ass'n v. Greater Nanticoke Area Sch. Dist., 938 A.2d 1177, 1185 (Pa. Commw. Ct. 2007) (citing Smith v. Cumberland Group, Ltd., 687 A.2d 1167 (Pa. Super. Ct. 1997)).  In fact, the loan at issue anticipated that it may be assigned to another entity.  It provides that "the term 'Lender' shall be deemed to include any person to whom the Note and Mortgage referred to above shall be assigned with the knowledge and consent of [HUD]" (Doc. 71-6, Building Loan Agreement, ¶ 18).

Defendant uses this assignment of contracts doctrine to argue that it no longer has a duty to the plaintiff.  We are unconvinced.  Defendant Beacon Hill cannot divest itself of its obligations under the contract merely by contracting with a third party to assume the liability.  Although performance of a contract can be delegated to a third party, neither that delegation of performance "nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor."  RESTATEMENT (SECOND) OF CONTRACTS § 318 *cited with approval in* Husak v. Berkel, Inc., 341 A.2d 174, 179 (Pa. Super. Ct. 1975); see also Grugan v. BBC Brown Boveri, Inc., 729 F. Supp. 1080 (E.D. Pa. 1990) (applying Pennsylvania law and holding the same).

Thus, we find that the delegation of the contract to HUD does not justify summary judgment in Beacon Hill's favor on the plaintiff's claims.

**B.  Third-Party Beneficiary Claim**

6

Count II of plaintiff's complaint asserts a "Third-Party" Beneficiary claim against Defendant Beacon Hill. Plaintiff avers that CNH and Beacon Hill intended that the proceeds from the loan agreement would benefit Plaintiff Quandel. (Doc. 1, Compl. ¶ 27). Beacon Hill is required to disburse the funds periodically for the labor and materials provided by Quandel. (Id.). Beacon Hill does not dispute that it had a duty to disburse funds. However, it claims that it had no duty to disburse the funds at issue until two express conditions precedent were met. They were never met; therefore, Beacon Hill argues that it had no duty to disburse the funds.

Under the law, the rights of a third-party beneficiary to a contract are no greater than the rights of the parties to the contract and are subject to any limitation which may be asserted between the promissor and promisee. In re Estate of Blumenthal, 812 A.2d 1279, 1289 (Pa. Super. Ct. 2002). Therefore, we must examine the contract to determine if Beacon Hill had a duty to disburse the funds to CNH. If so, plaintiff's third-party beneficiary claim may have merit. If there is no duty to CNH, then there is no third-party beneficiary claim to Plaintiff Quandel. Beacon Hill argues that certain conditions precedent had to occur before it was obligated to disburse the funds.

A "condition precedent" is "a condition which must occur before a duty to perform under a contract arises." Acme Mkts., Inc. v. Federal Armored Exp., Inc., 648 A.2d 1218, 1220 (Pa. Super. Ct. 1994). Furthermore, "an act or event designated in a contract will not be construed as constituting [a condition precedent] unless that clearly

7

appears to have been the parties' intention." Id.[1]  "Where a condition has not been fulfilled, the duty to perform the contract lays dormant and no damages are due for non-performance." Shovel Transfer and Storage, Inc., 739 A.2d 133, 139 (Pa. 1999).

     Beacon Hill indicates that the conditions precedent to its performance were not satisfied.  Beacon Hill had to disburse mortgage proceeds when (1) CNH requested payment for work acceptably completed and (2) the request was approved by HUD.  (Loan Agreement, ¶ 4(A)).  In the instant case, Beacon Hill argues that neither of these conditions were met; therefore, it had no duty to pay CNH and no duty to pay plaintiff as a third-party beneficiary.  Plaintiff has presented as evidence the affidavit of its president, Marc P. Koblentz, that provides that CNH never requested payment for the work at issue in Quandel's complaint and HUD refused to permit Beacon Hill to release any funds for payment to Quandel.  (Doc. 69-2, Koblentz Aff. at ¶ ¶ 6-7).

     Quandel first argues that these matters were not conditions precedent to payment. Second, they argue that even if they were conditions precedent, they were either met or waived by Beacon Hill.   We disagree.  A plain reading of the contract at issue indicates that Beacon Hill was not to make payment until these various conditions were met.[2]

---

    [1]Because contract interpretation is a matter of law, we may determine as a matter of law the purpose of a condition found in a contract. Acme, 648 A.2d at 1220, n.4.

    [2]Quandel also argues that the conditions that Beacon Hill cites do not apply to the final payment.   Regardless of whether it was an interim payment or the final payment, HUD had to provide approval for the disbursement of the funds.  Therefore, we shall discuss this condition and

8

In support of its position, plaintiff cites the deposition testimony of Encarnacion Loukatos, who at the time the Loan Agreement was entered into was the Director of Housing for HUD. (Pl. Ex. 3, Loukatos Dep. at 11). Loukatos was asked: "Can the mortgagee, to the best of your knowledge, distribute funds without the approve [sic] of HUD?"  A: "At their own peril." (Id. at 36).  He was also asked: "Can a retainage be released by the lender without HUD's approval? A. Sure. Q. However, if the retainage is released without HUD's approval, that amount that is released without approval is not insured by HUD; is that correct? A. Correct, that is my understanding." We find this testimony unconvincing to establish plaintiff's point. Loukatos was speaking generally.  He was not reviewing the contract at issue and indicating that the funds could have been released without HUD approval. Moreover, he indicated that it was *not* advisable for a mortgagee to release funds without HUD approval.   A plain reading of the contract indicates that such approval was required.[3]   Plaintiff in its complaint against HUD admits that HUD refused to approve the disbursement of the funds.  (See Complaint against HUD, ¶ 47). Therefore, at least one of the conditions precedent to payment were not met.

Next, plaintiff argues that even if the condition precedent was not met, it should be excused.  In support of this position, plaintiff cites Acme,

---

not whether the work was acceptably completed. (Loan Agreement, ¶ ¶ 4(a), 4(b)).

[3]Plaintiff also presents an email from HUD officials which indicates that in HUD never opposed the contractor being paid. (Doc. 95-5). It does not state, however, that they approved dispersal of the funds.   It merely says, at a time that legal action was threatened, that they did not oppose the contractor being paid.

9

supra.  In Acme, the Pennsylvania Superior Court indicated that failure to comply with a condition precedent may be excused where strict application of the condition would be unfair.  Id. at 1221.  The Restatement of Contracts discusses unfair "forfeitures"  a term that refers to "the denial of compensation that results when the obligee loses his right to the agreed exchange after he has relied substantially, as by preparation or performance on the expectation of that exchange." Restatement (Second) of Contracts § 229, comment b.  (quoted in Acme, 648 A.2d at 1221).  In the present case, we find the issues of forfeiture and excuse inapplicable.  Merely because plaintiff cannot recover against Beacon Hill does not mean that it will forfeit the amount it seeks.   Beacon Hill still has its claim against HUD for failing to approve the final payment.   (See Complaint against HUD, ¶ 47 asserting that HUD failed and refused to authorize the disbursal of the funds).  Thus, we find plaintiff does not face a forfeiture of its right to the money and its argument unconvincing.

### C.  Unjust enrichment/promissory estoppel

Count IV of plaintiff's complaint asserts a cause of action for unjust enrichment. (Doc. 1, Complaint ¶¶ 35-39).[4]   Defendant Beacon Hill argues that plaintiff's unjust enrichment claim and promissory estoppel claim cannot provide any relief.  Beacon Hill argues that where the relationships between parties are defined by express contracts then the doctrines of

---

[4]The unjust enrichment claim in the complaint specifically states that non-party CNH was unjustly enriched.  The parties have addressed the issue as if the unjust enrichment claim were directed at Defendant Beacon Hill.  We will also address this count as if it is asserted against Defendant Beacon Hill.  The sole defendant listed in the caption or in the section of the complaint entitled "The Parties" is Beacon Hill.  The reference in Count IV to CNH is therefore apparently a typographical error.

unjust enrichment and promissory estoppel cannot apply.  In the instant case, the parties' relationships are covered by the construction contract and the building loan agreement.  Thus promissory estoppel and unjust enrichment are inapplicable according to Defendant Beacon Hill.  We agree.

The law provides that neither promissory estoppel nor unjust enrichment apply when a binding contract is in existence.  <u>Carlson v. Arnot-Ogden Memorial Hosp.</u>, 918 F.2d 411, 416 (3d Cir.1990) (regarding promissory estoppel); <u>Hershey Foods Corp. v. Ralph Chapek, Inc.</u>, 828 F.2d 989, 999 (3d Cir.1987) (regarding unjust enrichment).  In the instant case, plaintiff claims to be the third-party beneficiary of binding written contracts.  Therefore, promissory estoppel and unjust enrichment are inapplicable.  Judgment on these claims will be granted to Defendant Beacon Hill.

Regardless, even if the two theories did apply, plaintiff could not prevail on either.  The Pennsylvania Superior Court has explained promissory estoppel as follows:

> This Court has previously stated that a cause of action under a theory of promissory estoppel will lie when a party relies to his or her detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be. Rinehimer v. Luzerne Cty. Com. College, 372 Pa.Super. 480, 496-98, 539 A.2d 1298, 1306 (1988), appeal denied, 521 Pa. 606, 555 A.2d 116 (1988). In Pennsylvania, the elements of promissory estoppel are:
> (1) Misleading words, conduct or silence by the party against whom the estoppel is asserted,
> (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; and
> (3) no duty of inquiry on the party seeking to assert

estoppel.
Thomas v. E.B. Jermyn Lodge No. 2, 693 A.2d 974, 977 (Pa. Super. Ct. 1997).

Thus, in order for promissory estoppel to apply, there must be some proof that the defendant made some type of representations or promises to the plaintiff.  In the instant case, there is not evidence of any such promise except for those set forth in the written contracts.  Accordingly, defendant argues that plaintiff's promissory estoppel claim must fail.  We agree.  Plaintiff has presented no evidence of separate promises made besides those found in the written contracts.  Therefore, its recovery must come under those contracts and its third-party beneficiary argument, if at all.  Summary judgment will be granted to the defendant on the promissory estoppel claim.

With regard to the unjust enrichment claim, this case is akin to R.M. Shoemaker Co. v. Southeastern Pa. Econ Dev. Corp., 419 A.2d 60 (Pa. Super. Ct. 1980).  As in the instant case, in Shoemaker, an owner obtained a loan for a building project.   The owner entered into an agreement with a general contractor for the construction work. Id.  at 62.   The lending bank eventually became convinced that the owner had become insolvent and stopped disbursing loan proceeds to it.  Id.   The general contractor then sued the lender under various theories of recovery, including one involving unjust enrichment. Id. at 63.   The Pennsylvania Commonwealth Court found that it had not been shown that the bank had been unjustly enriched by the contractor's work.  The bank merely withheld payments under the loan agreement.  It did not go into possession or acquire title to the real estate.  Id.

Likewise, in the instant case, plaintiff has not established or even

alleged a manner in which Beacon Hill has been unjustly enriched by the work performed by plaintiff. As in Shoemaker, defendant stopped disbursing loan proceeds, and did not take possession of or acquire title to the real estate. Thus, summary judgment will be granted to defendant on the unjust enrichment claim.

### D. Constructive trust

Plaintiff's complaint also asserts that Beacon Hill as the mortgagor, is in possession of loan funds for the construction of the project. Beacon Hill holds these funds for the benefit of Plaintiff Quandel. (Doc. 1, Compl. ¶¶ 20-21). Plaintiff claims that Beacon Hill improperly refuses to disburse the funds and improperly released funds to CNH to cover the costs of extension fees. (Id. at ¶¶ 23-24).

Under Pennsylvania law:

> A "constructive trust"' is defined as a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.

Kern v. Kern, 892 A.2d 1, 8-9 (Pa. Super. Ct. 2005) (citation omitted), appeal denied 903 A.2d 1234 (Pa. Aug. 1, 2006). Constructive trusts work in tandem with unjust enrichment. "Equity will impose a constructive trust under appropriate circumstances. However, our case law is exigent in demanding evidence of unjust enrichment before a trust will be created." Shepley v. Dobbin, 505 A.2d 327, 330 (Pa. Super. Ct. 1986). As set forth above, the plaintiff has not established unjust enrichment. There is no evidence that Defendant Beacon Hill holds any monies at issue. Therefore, plaintiff's constructive trust claim also fails, and summary judgment will thus be granted to the defendant on this claim.

13

**II. HUD's motion to dismiss/summary judgment**

Defendant HUD moves to dismiss the plaintiff's complaint arguing that the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1) divests this court of jurisdiction over plaintiff's claims against the government. After a careful review, we agree.[5]

The Tucker Act confers jurisdiction on the Court of Federal Claims for monetary claims against the "United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); see also Hahn v. United States, 757 f.2d 581, 586 (3d Cir. 1985). The United States District Court has concurrent jurisdiction, but only up to the amount of $10,000. 28 U.S.C. § 1346(a)(2). Even if the claim could be brought within the terms of some other jurisdictional grant *exclusive* jurisdiction is with the Federal Court of claims

---

[5]Plaintiff argues that we should not address the Tucker Act issue as we ruled upon this issue, in plaintiff's favor, previously in our decision on HUD's motion to dismiss. We disagree. With regard to the motion to dismiss, HUD argued that it could not be held liable to the plaintiff because there was no privity of contract between them. HUD argued that if a contract existed, we would not have jurisdiction pursuant to the Tucker Act. We found that we did not need to address the Tucker Act issue at that time. We found the Tucker Act issue moot because the plaintiff's complaint did not assert a breach of contract. (Doc. 92-5, opinion of 3/29/05 at 7). In ruling on the motion to dismiss, we accepted the allegations of the complaint as true and read them in the light most favorable to the plaintiff. Now, at the summary judgment stage we can more closely examine the claims to determine if they actually are based upon a contract. In fact, the briefs have more fully presented the issue at this point. Therefore, because of the different procedural posture of the case now and despite our ruling on the motion to dismiss, we will address HUD's argument with regard to the Tucker Act.

14

for such cases where the amount sought is greater than $10,000.  Hahn v. United States, 757 F.2d 581, 586 (3d Cir. 1985).  "This is because it is only under the terms of the Tucker Act that the United States waives its sovereign immunity to such claims, and this consent to suit is a jurisdictional prerequisite." Id.

We must determine therefore whether the plaintiff: 1) making a monetary claim against the United States; 2) founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States; 3) for in excess of $10,000.

In the instant case, there is no dispute that the case involves a monetary claim against the United States in that Defendant HUD is a department of the United States.   Moreover, the claim is for in excess of $10,000. (Docket No. 3:03cv1743, Doc. 1, Compl. ¶ 3, "the amount in controversy is in excess of $100,000.00 exclusive of interests and costs.").  The question, therefore, becomes whether the dispute is founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States.  We find that it is for two reasons.

First, the claim involves the insurance issued by HUD that was provided pursuant to section 232 of the National Housing Act, 12 U.S.C. § 1715z-1, an Act of Congress.  (Docket 3:03cv1743, Doc. 1, ¶¶ 16 -18).[6]

Moreover, even if the suit were not founded on an Act of Congress, it

---

[6]Additionally, in our memorandum of March 29, 2005, we indicated that Plaintiff argued, and we agreed, that it sued under the National Housing Act.  (Doc. 92-5, Memo. of 3/29/05 at 7-8).

15

is based upon a contract and therefore the second factor of Federal Court of claims jurisdiction would be met.  As set forth above, plaintiff characterizes its claims as causes of action for quantum meruit, third-party beneficiary, constructive trust and detrimental reliance.   A review of the complaint reveals that the contract, that is the Building Loan Agreement, is very much at issue with regard to these claims.

The complaint provides as follows:

> 9.  On or about March 11, 1997, CNH and Beacon Hill entered into a Building Loan Agreement, under which Beacon Hill agreed to provide a mortgage loan to CNH in the amount of $5,473,000.00.
> 15.  When Quandel entered the Contract for construction with CNH, it relied upon the existence of the mortgage loan insured by HUD and the Building Loan Agreement believing that Quandel would be paid for all of its work upon completion of the Project.
> 32.  If the borrower defaulted, Beacon Hill could collect on the mortgage insurance by assigning the mortgage and its companion documents to the secretary of HUD.
> 51.  On November 22, 2002, Beacon Hill assigned the mortgage to HUD and thereafter collected the insurance proceeds from HUD.
> 52.  As a result of the assignment, HUD now possesses all of the rights and obligations of the lender under the Building Loan Agreement.
> 53.  To date, HUD, as mortgagee, has not released the funds requested by Quandel.

(Docket No. 3:03cv1743, Doc. 1, Complaint).

In fact, the complaint seeks: "in excess of $100,000 [from HUD], or, such other sums as may be determined to be due and owing **under the Contract**"   (Id. at pg. 10) (emphasis added).

Accordingly, the claim is based on contract law.  See Berks Products Corp. v. Landreau, 523 F. Supp. 304, 309 (E.D. Pa. 1981) (explaining in a case dealing with the National Housing Act that a third-party beneficiary claim is "a contract claim pure and simple.").

16

Thus, all the factors for jurisdiction in the Court of Federal Claims have been met and the case should have been filed in that court. We lack subject matter jurisdiction, and the case against HUD will be dismissed.

**Conclusion**

For the reasons set forth above, summary judgment will be granted to Beacon Hill on all of plaintiff's claims and the claims against HUD will be dismissed for lack of jurisdiction.[7] An appropriate order follows.

---

[7] Plaintiff Quandel has also filed a motion for summary judgment. Because we are granting Defendant Beacon Hill's motion for summary judgment and Defendant HUD's motion to dismiss, we will deny plaintiff's motion.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THE QUANDEL GROUP, INC.,**<br>             **Plaintiff**<br><br>       **v.**<br><br>**BEACON HILL MORTGAGE CORP.**<br>     **and**<br>**ALPHONSO JACKSON, Secretary of the United States Department of Housing and Urban Development,**<br>                            **Defendant** | No. 3:01cv131<br><br>(Judge Munley) |

## ORDER

**AND NOW**, to wit, this 24th day of March 2008, it is hereby **ORDERED** as follows:

  1) Defendant Beacon Hill Mortgage Corp.'s motion for summary judgment (Doc. 68) is **GRANTED**; and

  2) Defendant Alphonso Jackson, Secretary of the United States Department of Housing and Urban Development's motion to dismiss and/or for summary judgment is hereby **GRANTED** to the extent that the case is dismissed for lack of jurisdiction over the claims asserted against this defendant.

  3) Plaintiff The Quandel Group, Inc.'s motion for summary judgment (Doc. 74) is **DENIED**.

  4) The Clerk of Court is directed to close this case.

                                                      **BY THE COURT:**

                                                      **s/ James M. Munley
                                                      JUDGE JAMES M. MUNLEY
                                                      United States District Court**